IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. LOHMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JESSEY R. LOHMAN, APPELLANT.

Filed February 1, 2022.    No. A-21-794.

Appeal from the District Court for Cheyenne County: DEREK C. WEIMER, Judge. Affirmed.

Donald J.B. Miller, Cheyenne County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Jessey R. Lohman, age 17 at the time of his charged offenses, appeals from the Cheyenne County District Court's order denying his motion to transfer his pending criminal proceeding to the juvenile court. Finding no abuse of discretion in the district court's order, we affirm.

## BACKGROUND

Four teenagers, ranging in age from 16 years to 18 years, engaged in a physical altercation at a park in Sidney, Nebraska, on August 1, 2021. According to the victim, a 16-year-old, he and his friends were in the park playing hide-and-seek when Lohman's mother instigated a fight between her 18-year-old son and the victim's 18-year-old brother. According to the victim, he was hit by Lohman "with what felt like a tire iron." The victim claimed to have deflected several other blows with his left arm and then ran away. He suffered a laceration to the top left side of his head, a cut to his elbow, and bruising and swelling to his left arm.

- 1 -

Police officers interviewed several witnesses, all of whom generally corroborated the victim's version of the event. The witnesses differed, however, in describing the instrument with which the victim was struck. Some described it as a tire iron, others a piece of metal, and others a piece of rebar. When police tried to interview Lohman and his older brother, they were unable to locate them at their house. Their mother refused to talk to the officer. Lohman was subsequently charged with use of a deadly weapon to commit a felony, a Class II felony, and second degree assault, a Class IIA felony.

Lohman was born in December 2003, making him 17 years and 7 months old at the time of the incident. He had been on probation since January 2020 and had three active probation cases. He also had one case in the predisposition phase in juvenile court. He was unsatisfactorily released from another probation term in January 2021.

Due to Lohman's prior involvement with the juvenile court, he had received in-home family treatment, day and evening reporting, youth transitional services, family support services, and was involved in a cognitive group known as MRT. He has participated in dual diagnosis counseling for substance abuse and mental health. All services have been community based as opposed to being placed in a facility. Lohman had one episode of removing his GPS monitoring bracelet and was gone for a week and a half to 2 weeks. He ultimately returned on his own. According to his probation officer, there are no other community services available for Lohman; however, he had never been placed at the youth rehabilitation and treatment center (YRTC) for treatment, nor placed at any other out-of-home facility.

Lohman was placed with his former stepmother in 2020, where he performed better, although he ran away on a couple of occasions. His stepmother testified that she had begun taking care of Lohman when he was 8 years old after his mother divorced and was later incarcerated. When his mother returned in late 2018-19, Lohman would occasionally live with his stepmother; other times he would live with his mother. According to his stepmother, Lohman did well until his freshman year of high school, when he began having behavioral issues. As a result, she took him to a psychologist so he could get a behavioral individualized education plan (IEP). The mental health records revealed that Lohman suffered from depression and was diagnosed with major depressive disorder, post-traumatic disorder, stress disorder, with a history of parent-child conflict, acute. Although a behavioral IEP was recommended, no plan was ever developed.

School attendance has been an issue for Lohman. He had multiple suspensions, both in and out of school. For a time he would attend regularly, then about 2 weeks prior to the transfer hearing he decided he was not going to attend anymore and was failing "a lot" of classes. Following the altercation at issue, the school would not allow him on the property because the victim attended the same school, so Lohman was working remotely.

Lohman's probation officer testified that she had concerns with placing Lohman in a facility due to his aggressive behavior. She believed the only place that would be willing to take him was the YRTC. She further testified that once a juvenile turns 18, some residential treatment facilities become unavailable. Lohman was 3 months shy of his 18th birthday at the time of the transfer hearing.

It appears some of Lohman's defiant behavior is attributable to his mother. She was involved in the incident in which Lohman cut off his monitoring bracelet. She is also attributed

with encouraging the fight that led to this arrest. Since being bonded out of jail, Lohman has resided with his stepmother and has been compliant with all bond conditions.

Following a hearing on the motion to transfer, the court issued a 10-page order in which it applied the 15 factors set forth in Neb. Rev. Stat. § 43-276 (Cum. Supp. 2020). It concluded that Lohman had received all of the community treatment available. The court noted that despite being on probation for 18 months, Lohman continued to engage in "criminality and lawbreaking." Consequently, it found that it was unclear what further services could be provided through the juvenile court and whether Lohman would be amenable to them.

Due to the violent nature of the crime, Lohman's age, his past history with the juvenile court, the need for public safety, and his appreciation for the nature and seriousness of the crime, the court determined that the greater weight of the factors supported maintaining jurisdiction in the district court. It therefore denied Lohman's motion. Lohman timely appealed.

## ASSIGNMENT OF ERROR

Lohman assigns that the district court erred by failing to transfer this case to the juvenile court.

## STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Bluett*, 295 Neb. 369, 889 N.W.2d 83 (2016). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

Motions to transfer a pending criminal case to juvenile court are governed by Neb. Rev. Stat. § 29-1816 (Cum. Supp. 2020) and § 43-276(1). Generally speaking, § 29-1816(3) sets forth the procedure to be followed, and § 43-276(1) enumerates the factors a court must consider when ruling on a motion to transfer, which include:

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the

juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

After considering all the evidence and reasons presented by both parties, a case shall be transferred to juvenile court unless a sound basis exists for retaining the case in district court. See § 29-1816(3)(a). As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id*. "The burden of proving a sound basis for retention lies with the State." *Id*.

Lohman was charged with use of a deadly weapon to commit a felony, a Class II felony, and second degree assault, a Class IIA felony, arising out of the altercation on August 1, 2021. At the time of the assault, he was 17 years old, and at the time of the transfer hearing, he was less than 3 months shy of his 18th birthday. Although Lohman argues that the factors set forth in § 43-276 weigh in favor of transferring his case to the juvenile court, he primarily argues that because he has not been offered treatment in a facility, particularly the YRTC, not all potential services available through the juvenile court have been exhausted. Therefore, he claims that a sound reason to retain jurisdiction in the district court did not exist.

Lohman's probation officer testified that a recommendation from Lohman's counselor or psychologist would be needed for placement at a residential treatment facility, and none was made. She also testified that other programs, such as NOVA (a psychiatric residential treatment facility) requires substance abuse at a higher level than what Lohman engages in. Furthermore, the out-of-state facilities would not accept Lohman due to his prior juvenile cases and history of aggression. Additionally, once a juvenile turns 18 years of age, some residential treatment facilities are unavailable.

Analyzing the factors of § 43-276, Lohman claims that he is amenable to treatment options available through the juvenile court and emphasizes the services that he has successfully completed. However, despite his intermittent success, he ultimately regressed. Lohman claims his mental health and substance abuse issues have not been adequately addressed. He points to therapy notes which indicate he was taken to the emergency room on January 15, 2021, as a result of depression and suicidal ideations, and subsequent notes to indicate that his initial medications were not working. However, subsequent notes of February 8 indicate that Lohman reported his medications were working well. Despite this, he continued with his aggressive behavior, culminating in the current charges.

The district court found that Lohman had been offered all treatment that was available to him within the community and we agree. As to treatment facilities that Lohman asserts he is willing to try, the evidence suggests that given his current evaluations, these are not available to him. We therefore agree that this first factor, the type of treatment the juvenile would most likely be amenable to, weighs in favor of retaining jurisdiction in the district court.

The second factor, whether the alleged offense included violence, the evidence is undisputed that it did. Lohman is alleged to have struck the victim from behind with some type of metal rod. This factor weighs in favor of retention.

Lohman claims that the third factor, motivation for the offense, weighs in favor of transfer because he was acting in defense of his brother when he struck the victim. He describes the motive as "a typically juvenile motivation. A dispute over a girl." The district court acknowledged Lohman's reason for striking the victim, but also recognized that other witnesses indicated that the victim was not engaged in the fight prior to being struck by Lohman. The court described the motivation as "muddled" but concluded it weighed in favor of retaining jurisdiction. We find no abuse of discretion in this finding.

Given Lohman's close proximity to his 18th birthday, the district court reasoned that the time during which the juvenile court would have jurisdiction over him was "rapidly coming to an end." Therefore, because of Lohman's age and the circumstances of others involved in the offense, this factor weighed in favor of retention. Lohman argues that since the participants were between the ages of 16 and 18 years of age and had apparently gone to the park to fight, "the ages of the participants supports the transfer of this case to the juvenile court." Brief for appellant at 21. We disagree, and find that Lohman's age weighs in favor of retention.

One of the most influential factors for retaining jurisdiction is Lohman's previous history with the juvenile court system. Although Lohman refers to his prior juvenile adjudications as involving "relatively minor offenses," the evidence supports the district court's characterization of them as "regular and consistent involvement" with the court. His prior brushes with the law include charges for criminal mischief (damaging the hood of an automobile causing damage of $0-$500), minor in possession, including marijuana and drug paraphernalia, theft (which was ultimately dismissed), possession of marijuana and drug paraphernalia, another charge of theft, criminal mischief with damage between $501 and $1,499, and terroristic threats, amended to disturbing the peace. As a result of these adjudications, Lohman has had a myriad of services provided to him, yet his actions continue to escalate. This factor weighs in favor of retention.

The district court found that consideration of public safety and Lohman's ability to appreciate the nature and seriousness of the crime both weighed in favor of retaining jurisdiction. Considering the fact that Lohman went to the park with a weapon and given his prior experience with the juvenile court, we agree with the district court that public safety is a concern and that Lohman had an appreciation of the consequences of his action and the danger that it posed. Lohman argues that because the altercation involved a female acquaintance, there "is no evidence that [Lohman] is out, wandering the streets of Sidney looking for his next victim." Brief for appellant at 26. However, given the escalating nature of Lohman's aggressive behavior, it is uncertain as to who, or what, may next set him off. These factors weigh in favor of retention.

The only factor that the court found weighed in favor of transfer was a consideration of Lohman's best interest, but recognized that it "is difficult to readily evaluate" his best interests. The remaining factors it found either neutral or irrelevant to the facts of this case.

After considering all of the evidence, given the services which have already been provided to Lohman, the violent nature of the offense, Lohman's age and previous history with the juvenile court system, and the need for public safety, we find no abuse of discretion in the district court's order denying transfer of Lohman's case to the juvenile court.

CONCLUSION

Finding no abuse of discretion in the district court's order denying the motion to transfer, we affirm.

AFFIRMED.